Lucille HINDS, Appellant,

v.

SOUTHWESTERN SAVINGS ASSOCIA-
TION OF HOUSTON, Texas, Appellee.

No. 8053.

Court of Civil Appeals of Texas,
Beaumont.

Dec. 29, 1977.

Rehearing Denied Jan. 19, 1978.

Barry S. Berger, Houston, for appellant.

J. Michael Bell, Houston, for appellee.

DIES, Chief Justice.

Plaintiff below, Lucille Hinds, sued Southwestern Savings Association of Houston, defendant below, to recover a sum of money deposited in a joint account by plaintiff and her former husband in defendant's institution. The money was deposited prior to 1969, and the language of the signature card required that signatures of both husband and wife for any withdrawal from such account so long as both parties were alive. On or about January 4, 1969, her former husband was paid the entire deposit by the defendant. She brought this suit on March 24, 1976. Defendant filed a motion for summary judgment, which the trial court granted, and from which plaintiff perfects this appeal. Since the parties concede that the two-year statute of limitations is inapplicable, the sole question for us to decide is the date the four-year statute of limitations began to run.

Plaintiff's affidavit in opposition to the motion for summary judgment states: "On or about April 9, 1972, I, for the first time, learned upon inquiry at Defendant's main branch, that the sum of $11,022.37 was missing from the account in question."

The general rule is that where a deposit of money is made, the statute of limitations begins to run in favor of the depositor only on demand and refusal or the assertion of some adverse claim by the depositary. *54 C.J.S. Limitations of Actions § 145 at p. 71 (1948).* See also *Delaney v. Farmers State Bank in Merkel,* 115 S.W.2d 736, 739 and 740 [(Tex.Civ.App.—Eastland 1938) reversed on other grounds, 134 Tex. 160, 133 S.W.2d 757 (1939)]. In *First State*

*Bank v. Shannon,* 159 S.W. 398, 401 (Tex. Civ.App.—Amarillo 1913, writ ref'd), we find, ". . . the statutes of limitation did not begin to run until demand and refusal to pay"; and in *Farmers' Nat. Bank v. J. W. Wallace & Co.,* 263 S.W. 1105, 1107 (Tex.Civ.App.—Texarkana 1924, no writ): "It is conceded that limitation does not begin to run against a claim for bank deposits until after demand and refusal of payment."

In *Yeaman v. Galveston City Co.,* 106 Tex. 389, 167 S.W. 710, 723–724 (1914), our Supreme Court said:

> "The holding of these authorities is upon the principle that the trusteeship of a corporation for its stockholders is that of an acknowledged and continuing trust. . . . It has all the nature of a direct trust, to which, it is generally held, statutes of limitation have no application until there is a clear and unequivocal disavowal of the trust, and notice of it brought to the cestui que trust."

■ We see no reason not to apply this principle to a savings and loan institution holding money for depositors, especially since the statute *Tex. Rev. Civ. Stat. Ann. art. 852a, § 6.08 (Supp.1977)* expressly condemns such an institution from doing what defendant did here.

■ We believe the affidavit of Lucy Hinds raises a fact issue; hence the granting of the summary judgment was improper. *Gibbs v. General Motors Corporation,* 445 S.W.2d 589 [(Tex.Civ.App.—Eastland 1969) reversed 450 S.W.2d 827 (Tex.1970)]. The order of the trial court is reversed, and the cause is remanded for trial.

REVERSED and REMANDED.

1. *Delaney v. Farmers State Bank in Merkel,* 115 S.W.2d 736, (Tex.Civ.App.—Eastland 1938), *reversed,* 134 Tex. 160, 133 S.W.2d 757 (1939); *First State Bank v. Shannon,* 159 S.W. 398 (Tex.Civ.App.—Amarillo 1913, writ ref'd); and *Farmers' Nat. Bank v. J. W. Wallace & Co.,* 263 S.W. 1105 (Tex.Civ.App.—Texarkana 1924, no writ).

2. *Yeaman v. Galveston City Co.,* 106 Tex. 389, 167 S.W. 710 (1914), where the court had to

KEITH, Justice, dissenting.

Perhaps the rule enunciated by the majority should govern the rights between savings and loan associations and the patrons of such institutions. But, even a cursory review of the authorities cited discloses that up until today no court or legislative body had so held.

Three of the cases cited [1] deal with the relationship between commercial banks and their depositors; another case involved a lost stock certificate; [2] and, the last case enunciates hornbook law in this state with reference to summary judgments. [3] None touch savings and loan associations even tangentially. The single statute cited [4] simply authorizes such entities to accept joint deposits from patrons with a right to survivorship; it has nothing to do with the problem confronting the court.

The alacrity with which the majority seized upon language formerly applicable to commercial banks serves to emphasize the fallacy underlying the holding. In the first place, the authorities cited are not now controlling even as to commercial banks. See Banking Code, *Tex. Rev. Civ. Stat. Ann. art. 342–701 (1973),* and *Liberty Mutual Ins. Co. v. First National Bank in Dallas,* 151 Tex. 12, 245 S.W.2d 237, 240 (1951). Savings and loan associations "are sui generis in the corporate family." *13 Am. Jur. 2d Building and Loan Associations § 3, at 145 (1964).* Such institutions are defined by statute, *Tex. Rev. Civ. Stat. Ann. art. 852a, § 1.03(2) (1964),* in this language:

> " 'Savings and Loan Association' shall mean an association whose primary purpose is to promote thrift and home financing and whose principal activity is the lending to its members of money accumulated in savings accounts of its

first determine if the claimant's predecessor was a stockholder or only entitled to become a stockholder.

3. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970).

4. *Tex. Rev. Civ. Stat. Ann. art. 852a, § 6.08 (Supp.1977).*

members on the security of first liens on homes and other improved real estate." Such institutions have "members" *[Art. 852a, § 1.03(10) (Supp.1977)]* but the statute does not contain a definition of a depositor or of a deposit. On the other hand, commercial banks in Texas have been granted extremely broad powers; contrast the statute defining savings and loan associations with the language found in Banking Code, *Tex. Rev. Civ. Stat. Ann. art. 342–301 (1973),* setting out the powers of state banks.

The rule enunciated by the majority likely will come as a distinct surprise to plaintiff's counsel. On the appeal her counsel has sought to excuse her from the reach of the limitation statutes by calling upon the so-called "discovery" or "blameless ignorance" exceptions to the statutes of limitation, relying heavily upon footnote one in Justice Pope's dissent in *Robinson v. Weaver,* 550 S.W.2d 18, 22 (Tex.1977). I have given careful consideration to those cases but remain unpersuaded that they control the case at the bar.

Our Supreme Court has held in *Robinson v. Weaver,* supra (550 S.W.2d at 19):

"For the purposes of application of statutes of limitations, a cause of action generally can be said to accrue at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Williams v. Pure Oil Company,* 124 Tex. 341, 78 S.W.2d 929 [931] (1935)."

But, in order to claim the benefit of the "discovery" rule, plaintiff labored under another burden—the necessity of showing a fraudulent concealment of the existence of a cause of action. In our case, plaintiff has made no contention that the defendant concealed the breach of the contract or was guilty of any actionable fraud. In *Owen v. King,* 130 Tex. 614, 111 S.W.2d 695, 697, *114 A.L.R. 859* (1938), the Court held:

"The fraudulent concealment of a cause of action by the defendant, even though that cause of action may not have arisen in fraud, will avoid the bar of the statute of limitation, where the plaintiff, after exercising ordinary diligence, fails to discover the existence of a cause of action. But *the concealment must be fraudulent. Mere failure to disclose a cause of action or mere concealment of a cause of action, when the defendant owes no duty to disclose, is not fraudulent concealment."* (emphasis supplied)

Or, as stated by Justice Walker in *Nichols v. Smith,* 507 S.W.2d 518, 519 (Tex.1974):

"When the defendant is under a duty to make a disclosure but fraudulently conceals the existence of a cause of action from the one to whom it belongs, the guilty party will be estopped from relying on the defense of limitations until the right of action is, or in the exercise of reasonable diligence should be, discovered."

See also *Maddox v. Oldham Little Church Foundation,* 411 S.W.2d 375, 381 (Tex.Civ. App.—Tyler 1967, writ ref'd n. r. e.).

Moreover, as stated in *Nichols v. Smith,* supra, the plaintiff had the burden of alleging and supporting the allegation of fraudulent concealment of the cause of action if she was to avoid the summary judgment. (507 S.W.2d at 520) As indicated earlier, plaintiff did not charge the defendant with fraud nor did she make any effort to prove fraudulent concealment.

In recent years, we have seen a great deal of blurring of the formerly distinct images of the commercial banks, savings and loan associations, and credit unions. Each has expanded into areas ordinarily considered to belong exclusively to one or the other of the different types. However, the legal base and statutory framework of each type of institution is different from the other. I have grave doubt as to the wisdom of an opinion which equates a depositor in a savings and loan association with one depositing his money in a demand account in a commercial bank. The legislature undoubtedly had reasons for creating the two types of institutions and I find no grave or pressing reason to undermine the statutory distinctions so made.

The legislature knew the difference between time and demand deposits and savings deposits, each being treated separately in the Banking Code [*Art. 342–301(a), (f), and (g)*]; but no such mention of either type of deposit was made when it came to regulating savings and loan associations in a comprehensive statute.

I respectfully suggest that if a new type of account in savings and loan associations is to be created—one which is payable on demand—such should be accomplished by action of the legislature and not by an intermediate court.

I would affirm the judgment of the trial court.

